UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

FRED EHRLICH,

                Plaintiff,        07 Civ. 11597

   -against-                         OPINION

ALFRED A. GATTA, as the Village Manager
of Scarsdale, WALTER J. HANDELMAN, as
the Mayor of Scarsdale, JOHN A. BROGAN,
as Scarsdale Police Chief, and the
VILLAGE and TOWN OF SCARSDALE,

                Defendants.

------------------------------------------X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/09

A P P E A R A N C E S:

       Attorney for Plaintiff

       WILLIAM L. BARISH, ESQ.
       30 Glenn Street, #201
       White Plains, New York  10603

       Attorneys for Defendants

       RICE & AMON
       Four Executive Boulevard, Suite 100
       Suffern, New York  10901
       By:  Terry A. Rice, Esq.

**Sweet, D.J.**

Defendants Alfred A. Gatta, Village Manager of Scarsdale ("Gatta" or the "Village Manager"), Walter J. Handelman, Mayor of Scarsdale ("Handelman" or the "Mayor"), John A. Brogan, Scarsdale Police Chief ("Brogan" or the "Chief") (collectively, the "Individual Defendants,") and the Village and Town of Scarsdale ("the Village" or "Scarsdale") (collectively with the Individual Defendants, the "Defendants"), have moved under Rule 12(c), Fed. R. Civ. P., to dismiss the complaint of Fred Ehrlich ("Ehrlich" or the "Plaintiff") alleging violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq., and state law. Upon the conclusions set forth below, the motion is granted, and the Complaint is dismissed.

## I. PRIOR PROCEEDINGS

The Complaint was filed on December 27, 2007, by Ehrlich alleging that Defendants violated the ADA and state law by providing insufficient handicapped parking spaces for rail commuters to whom it had sold handicapped commuter parking permits.

1

Defendants answered the Complaint and on June 20, 2008, filed the instant motion to dismiss. The submission of the affidavits and memoranda in connection with the motion was completed on September 29, 2008. The case was reassigned to this Court on June 5, 2009.

## II.  **THE ALLEGATIONS**

The following allegations, taken from the Complaint, are accepted as true for the purpose of resolving this motion.

Plaintiff is a seventy-five year old attorney and resident of Scarsdale, New York, who commutes to Manhattan from the Scarsdale Metro-North train station (the "Station"). The Village owns and operates a multi-tiered parking garage (the "Garage") located within walking distance of the Station. The Village also has jurisdiction over the streets adjacent to the Station with the authority to designate parking spaces for disabled riders. The Village has created more than 100 metered parking spaces at the Station, and the Garage and the Village's adjoining parking lots can accommodate more than 400 parked cars.

2

Village residents who purchase a permit to park in the Garage ("Freightway Permit") are entitled to park at un-metered, 24-hour parking spaces at the Garage on a daily basis. The Village provides no other parking permits for resident rail commuters. Ehrlich holds a Freightway Permit.

Plaintiff was struck by a bus on February 17, 2004, and experiences continuous pain that is aggravated by walking and standing. As a result of his disabling back condition, Ehrlich received a handicapped parking permit from the Village which initially allowed him to use an outdoor handicapped parking space adjacent to the Garage. According to Ehrlich, at the time he received his parking permit, this space was the only handicapped space in the Village for people with Freightway Permits and the only handicapped space available to Village residents commuting from the Station.

3

At the time the Complaint was filed, the Village provided five handicapped parking spaces for Freightway Permit holders located at the Station.[1]

The Complaint asserts four claims against Defendants. The first claim alleges that by the time the Village added five handicapped spaces at the Station, it had issued more than five outstanding handicapped permits to commuters with Freightway Permits. According to Ehrlich, the five handicapped spaces are usually occupied when he arrives at the Station to take a train to work and that when such parking spaces are not available, he often parks at metered parking spaces at the Station, rather than in the Garage. When Plaintiff parks at metered spaces at the Station, the Village usually issues him "time expired" parking summonses, which Ehrlich has requested be dismissed. Ehrlich has also requested that the Village add more parking spaces for handicapped commuters. According to the Complaint, the Village has refused both to provide additional handicapped spaces and to allow Plaintiff to use metered parking at the Station without penalty when the handicapped spaces provided are occupied.

---

[1] According to Defendants, the Village now provides nine handicapped parking spaces.

The Complaint further alleges that Plaintiff has tried to telephone or visit the Village Manager but that Gatta has been unavailable and that Plaintiff has received no indication that the Village Manager has directed dismissal of his parking tickets.

Based on these allegations, Plaintiff's first cause of action seeks an order enjoining the Village "from issuing parking summonses at the Station to disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking in accordance with the ADA for disabled residents entraining at the Village Station." Complaint ¶ 49.

The second cause of action seeks damages pursuant to the ADA. The Complaint alleges that the failure to provide sufficient handicapped commuter parking has caused the Plaintiff to suffer "delays, emotional distress, further pain and related difficulties" when he has been unable to find handicap parking at the Station. Id. at ¶ 51.

The third claim seeks injunctive relief pursuant to state law, namely, an order enjoining Defendants from issuing "parking summonses to disabled residents with permits for Freightway parking and handicapped parking, until such time as the court finds that the Village has provided the HFP Spaces required by state law." Id. at ¶ 58.

The fourth and final cause of action seeks damages pursuant to state law for "expenses, pain, emotional distress and attorneys' fees resulting from the Village's violation of state law governing handicapped parking." Id. at ¶ 60.

### III. **THE APPLICABLE LEGAL STANDARDS**

#### A. **Rule 12(c)**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005)). In considering a motion to

dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (quotations and citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). However, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above

7

the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B.  **Title II of the ADA**

Title II of the ADA prohibits discrimination in public services and specifically provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a prima facie case under this provision, plaintiffs must allege facts sufficient to establish that "(1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

8

In order to prove discrimination under the third prong, plaintiffs have available three theories: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003). Ehrlich's Complaint rests on the third theory, namely that the Village has failed to accommodate his disability by providing sufficient accessible parking.

To establish a reasonable accommodation claim under the ADA, "the relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled." Henrietta D., 331 F.3d at 271. Indeed, "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." Id. To accomplish such "meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." Id.

9

In determining what constitutes "reasonable accommodations," the Court looks to federal regulations implementing both Title II and section 504 of the Rehabilitation Act. See Meekins v. City of New York, 524 F. Supp. 2d 402, 407 (S.D.N.Y. 2007). Pursuant to 28 C.F.R. § 41.53, covered entities are required to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program."

While the ADA does not include specific requirements for the provision of handicapped parking spaces, regulations applicable to the provision of state and local government services do provide that "a public entity should provide an adequate number of accessible parking spaces in existing parking lots or garages over which it has jurisdiction." 28 C.F.R. Pt. 35, App. A.

In addition, pursuant to the New York State Uniform Fire Prevention and Building Code, nine handicapped accessible parking spaces are required to be provided when the total number of parking spaces is between 401 and 500.

10

See Rice Decl., Ex. C, 9 NYCRR § 1106.1. That provision further provides that "[a]ccessible parking spaces shall be located on the shortest accessible route of travel from adjacent parking to an accessible building entrance. Accessible parking spaces shall be dispersed among the various parking facilities provided." Id., 9 NYCRR § 1106.6.

## IV. DISCUSSION

### A. The ADA Claims Are Dismissed

The Complaint alleges that Defendants violated the ADA by not providing sufficient handicapped parking spaces for its Freightway Permit holders. However, Ehrlich has not alleged sufficient facts to show that the Village has failed to accommodate his disability.

While Plaintiff asserts that he has been denied meaningful access, the mere fact that he has been issued tickets for parking at metered spaces when no handicapped spots remain does not state a claim under the ADA. First, Ehrlich had been issued a handicapped parking sticker, entitling him to park in a handicapped parking space. In

11

order to provide meaningful access to the Station to the holders of those stickers, including Ehrlich, the Village has created nine parking spaces reserved for handicapped parking. See Kelly v. Rice, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005) (stating, in dicta, that plaintiff did not state a claim under the ADA against county where plaintiff had obtained a handicapped parking sticker from county since "decisions by officers about whether to issue summonses are matters of local/state discretion and do not implicate the ADA").

More significantly, nothing in Ehrlich's Complaint demonstrates that nine handicapped spaces is not "reasonable accommodation" and therefore sufficient under the ADA. To the contrary, Defendants cite New York regulations which require nine handicapped accessible parking spaces where the total number of parking spaces is between 401 and 500. Although Plaintiff is correct in asserting that the cited provisions do not in any way supplant or "control" the ADA, the regulations do suggest that the Village has provided reasonable accommodation in making nine handicapped spaces available to Station users. The fact that Ehrlich has been unable to park in a handicapped space because other handicapped parking permit

12

holders have parked there does not give rise to an ADA claim against Defendants.

Ehrlich directs the Court to two cases which are easily distinguished from the instant case. In Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2d Cir. 1995), the Second Circuit Court of Appeals held that a co-operative was required to accommodate a disabled tenant by providing parking for her ahead of other tenants on the waiting list.[2] Similarly, in Meekins v. City of New York, 524 F. Supp. 2d 402 (S.D.N.Y. 2007), a New Jersey resident challenged New York City's policy of issuing handicapped parking permits only to those who lived, worked or studied in New York. The court there found that the City's failure to issue the plaintiff a handicapped permit or to make the City's handicapped parking available to plaintiff demonstrated discrimination under the ADA for purposes of the defendant's motion to dismiss. Here, by contrast, Defendants have provided Ehrlich with a meaningful opportunity to park at the Station by issuing him a handicapped parking permit and making nine parking spaces

---

[2] Although the action was brought under the Fair Housing Amendments Act (the "FHAA"), the court noted that the anti-discrimination provisions of the FHAA involved the same "reasonable accommodation" standard as section 504 of the Rehabilitation Act. Cadman Towers, 51 F.3d at 334–35.

13

available to him in close proximity to the Station. He has not been denied reasonable accommodation and therefore his ADA claims are dismissed.

### C. **The State Law Claims Are Dismissed**

Without recitation of any provision of law, the third and fourth causes of action of the Complaint seek injunctive relief and damages "under state law." The Village has moved to dismiss Plaintiff's state law claims on the grounds that the Complaint failed to allege any discrete statutory violation of any provision of law upon which the claims were premised. In opposition to Defendants' motion, Ehrlich has asserted that his state law claims are made pursuant to the New York Human Rights Law, N.Y. Exec. L. § 296(2)(a), which makes it unlawful for the owner of a public accommodation, "directly or indirectly, to refuse, withhold from or deny . . . any of the accommodations, advantages, facilities or privileges thereof . . . to any person on account of . . . disability . . . ."

14

Regardless of Plaintiff's failure to initially plead violation of any specific state law provisions, Ehrlich's state law claims are barred by virtue of his failure to allege the filing of a proper and timely notice of claim. An action premised on the New York Human Rights Law is subject to the notice of claim requirements of CPLR § 9801 and General Municipal Law § 50-h. See Cotz v. Mastroeni, 476 F. Supp. 2d 332, 355 (S.D.N.Y. 2007) ("Pursuant to New York law, [s]ervice of a notice of claim . . . is a condition precedent to a lawsuit against a municipal[ity]." (citing Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 61 (1984)). The requirement also "applies with equal force to state law claims against municipal employees." Id. Plaintiff has failed to allege the filing of a timely notice of claim with the Village, and therefore his state law claims are dismissed.

In addition, although the definition of disability under § 296 is less restrictive than under the ADA, see Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 155 (2d Cir. 1998), the requirements of a prima facie claim pursuant to the New York Human Rights Law is identical to one pursuant to the ADA. See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 n.3 (2d Cir.

15

2001); Shannon v. Verizon New York, Inc., 519 F. Supp. 2d 304, 310-11 (N.D.N.Y. 2007). In light of the Court's finding that Ehrlich has failed to state a claim for a violation of the ADA, Plaintiff's state law claims are insufficient as a matter of law for the same reasons.

**CONCLUSION**

Based upon the conclusions set forth above, the motion of the Defendants is granted and the Complaint dismissed with costs.

Submit judgment on notice.

So ordered.

**New York, N.Y.**
**October 2, 2009**

ROBERT W. SWEET
U.S.D.J.

16